[No. 17776. Department Two. September 13, 1923.]

DR. JOSEPH ROANE, *Appellant,* v. COLUMBIAN PUBLISH-
ING COMPANY, *Respondent.*[1]

LIBEL AND SLANDER (14, 28)—ACTS OF PUBLIC OFFICERS—PRIVILEGE
—PLEADING—SPECIAL DAMAGE. A newspaper article criticizing a
city councilman for an ordinance relating to dogs, which is
characterized as an "idiotic performance" which was "railroaded"
through the council, and charging him with being a failure as a
councilman, is not libelous *per se,* and is not actionable without al-
legation and proof of special damages, where there was nothing that
must naturally or presumably occasion pecuniary damage to him.

Appeal from a judgment of the superior court for
Clarke county, Simpson, J., entered October 17, 1922,
upon sustaining a demurrer to the complaint, dismiss-
ing an action for libel. Affirmed.

*Crass & Hardin,* for appellant.

*Miller, Wilkinson & Miller,* for respondent.

PEMBERTON, J.—Appellant is a resident of Vancou-
ver, a physician by profession and a member of the
city council. Respondent is a corporation engaged in
the publication of a newspaper in the city, edited by
Herbert J. Campbell. On July 6, 1922, respondent
published the following article which is claimed by
appellant to be false and untrue and known to be such
by the respondent at the time of its publication:

"Of all idiotic performances of the city council, the
ordinance which was railroaded through the council
last Monday evening, relative to dogs on the streets of
Vancouver, takes the prize. . . . .

"Unprecedented was the action of the council in
taking this action. . . . . Then the railroad gang
got busy and rushed it through . . . . despite the
vigorous protests of Mayor Kiggins to table it or at
least consider it for a week before final passage.

[1]Reported in 218 Pac. 213.

But the fight by the friends of dogs, by the friends of children and by the lovers of homes was hopeless against the carefully planned attack for which a smoke screen had been laid by those two worthies, Atkinson and Roane. These gentlemen had apparently made up their minds that the only hope of killing the dogs and saving their ordinance was through railroad action —so railroad action it was. . . . .

"Possibly the Atkinson-Roane railroad gang had in mind the fact that they weren't getting paid for their offices and didn't care whether or not the people liked what they did. Possibly they felt that they have made such a miserable failure of the city's business already that they were due to be retired by the voters at the forthcoming election for general worthlessness and so rather than to face such an ignominy, did something which they knew would raise such a storm of protest that they would be swept out of public office—with cause. . . . .

"Possibly some kind friends have passed the word to the leaders of the railroad gang that they, too, are regarded by the public as having failed properly to conduct the city's business. Possibly they wanted to be ousted for cause, rather than for uselessness. If so, they have doubtless succeeded in stirring up enough resentment in the dogless city ordinance to make sure that there will be concrete reasons for a change at the city hall. But goodness knows, there were enough already."

Because of the publication, appellant instituted this action for the recovery of $5,000 damages resulting through mental anguish, injury to his feelings, his character and his reputation, both as a public officer and in his profession, and for the loss of public confidence and respect of his fellow men.

The respondent demurred to the complaint of appellant upon the ground that the complaint does not state facts sufficient to constitute a cause of action. The demurrer being sustained and appellant refusing to

plead further, judgment of dismissal was entered, against which judgment this appeal is taken.

The demurrer admitting all of the allegations of the complaint, it is for the court to determine whether or not, in the absence of a plea for special damages, the article published is actionable or libelous *per se*.

As said in the case of *Denney v. Northwestern Credit Association*, 55 Wash. 331, 104 Pac. 769, 25 L. R. A. (N. S.) 1021:

"In all charges of this kind, it is the duty of the court to regard the words spoken or written as might a stranger to the parties, and if they be in themselves, and without the aid of the innuendo, otherwise innocent, and if they do not in themselves, and without the aid of the special knowledge possessed by the parties concerned, imply malice, or hold the party out to public contempt or ridicule, or make any charge involving moral turpitude, or touch him in his business, or subject him to an infamous punishment, it is the general rule that they are not libelous *per se*."

In the case of *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B 442, we recognized the following rule:

" 'Unfortunately, the law of libel has been obscured by a mass of technicalities and subtle refinements. When language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action, and *prima facie* constitutes a wrong, without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; that this is all that is meant by the term 'actionable *per se*.' Therefore the real practical test, by which to determine whether special damage must be alleged and proved in order to make out a cause of action for defamation, is whether the language is such as necessarily must or

naturally and presumably will, occasion pecuniary damage to the person of whom it is spoken.' "

In considering this case, however, we must recognize that the publication was with reference to the acts of public officers. It is charged that the article was maliciously published, and this becomes an issue when the privileged character of the publication is urged; that "to constitute libel the publication must not only be done intentionally, but it must either charge a criminal offense or some moral delinquency of a public official." No criminal offense is charged.

"Moral turpitude in this connection has been defined to be an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow-man or to society in general, contrary to the accepted and customary rule of right and duty between man and man." 25 Cyc. 272.

The article does not charge appellant with an act of this character.

In the case of *McKillip v. Grays Harbor Pub. Co.*, 100 Wash. 657, 171 Pac. 1026, we said:

"The object of the privilege accorded to published comments upon public officers or those seeking public office is to inform the electorate of the fitness or unfitness of those falling within either class. To permit the publication of a falsehood concerning a candidate for office which either charges him with the commission of a crime or with being morally depraved would be subversive of the very purpose from which the privilege springs. The press is allowed a large liberty in commenting upon the character and fitness of a candidate for public office. This liberty, however, does not give it free license to promulgate falsehoods."

There is no charge in the publication of lack of professional integrity or skill. The action of the council is characterized as "an idiotic performance," that the ordinance was "railroaded" through and the fight by

the friends of the dogs and the lovers of homes was helpless because of the well-planned attack of Atkinson and Roane. The ordinary meaning of "railroad action" in legislative bodies is the forcing through of legislation over the objection of a minority, and if this were done as charged, no odium attaches to such conduct and the charge is not a subject of an action for libel. If the article charges, as contended by appellant, that he, having made a miserable failure of the city's business, would be retired at the forthcoming election for general worthlessness as a councilman, that would not be the basis for an action for libel without showing special damages. It is a charge that he is a failure as a councilman and would be retired from office at the next election, and this is not libelous.

Appellant is not charged with immorality, with falsehood or moral delinquency or moral turpitude, and not being libelous *per se,* and being of a privileged character, the trial court properly sustained the demurrer to the complaint.

The judgment of the trial court is affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PARKER, JJ., concur.